**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: January 29 2018

Mary Ann Whipple
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 17-33184 |
| | ) | |
| ProFlo Industries, LLC, | ) | Chapter 11 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION REGARDING MOTION TO APPOINT TRUSTEE

This case came before the court for hearing on Creditor SkyMark Refuelers, LLC ("SkyMark") motion to appoint a Chapter 11 trustee ("Motion") [Doc. # 85], oppositions filed by Debtor and Terry N. Bosserman ("Bosserman") [Doc. ## 114 & 116] and Secured Creditor Huntington National Bank ("Huntington Bank") [Doc. ## 110], and the response to the Motion filed by First Federal Bank of Midwest ("First Federal") [Doc. # 112]. Debtor's counsel, Bosserman, and counsel for Bosserman, SkyMark, First Federal, Huntington and the United States Trustee all appeared in person.

The district court has jurisdiction over this Chapter 11 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. This is a core proceeding that the court may hear and determine under 28 U.S.C. § 157(b)(1) and (b)(2)(A).

At the hearing, the parties had the opportunity to, and did, present testimony and evidence in support

of their respective positions. Regardless of whether or not specifically referred to in this decision, the court has examined the submitted materials, weighed the credibility of the witness, considered all of the evidence, and reviewed the entire record of the case. Based upon that review, and for the reasons that follow, the court will deny SkyMark's Motion but will appoint an examiner for the limited purpose of determining and reporting whether claims exist that should be pursued relating to Debtor's transactions with ProFlo Latam and transfers to insiders of Debtor.

## BACKGROUND

Bosserman is the President and sole member of Debtor, which is in the business of manufacturing and refurbishing aircraft refueling equipment. Bosserman testified that this is a very small, specialized and technical industry and that Debtor's sales are relationship driven. Bosserman personally handles all sales, negotiates with vendors, approves all invoices and engineering drawings, and writes all of the technical specs for each unit. Bosserman is a seventy-five percent owner of ProFlo Latam, a Columbian entity that does certain work for Debtor. He also owns Bosserman Automotive Engineering, LLC, ("Automotive"), which owns and leases the building where Debtor conducts business.

Debtor is a defendant in a civil action pending in the Court of Common Pleas, Wyandot County, Ohio ("State Court") captioned *First Federal Bank of Midwest v. Bosserman Aviation Equipment, et al.*, Case No. 14-CV-0089 ("State Court Action"). Bosserman and Automotive are co-defendants of Debtor in the State Court Action, which includes claims asserted against them by First Federal and SkyMark. First Federal's complaint includes claims against them for violation of Ohio's Corrupt Activities Act, fraud, fraudulent transfers and misappropriation of collateral. [Cr. Ex. 1]. SkyMark's intervenor complaint includes claims for misappropriation, conversion of assets purchased by SkyMark at the receiver's auction of the assets of Bosserman Aviation Equipment, Inc., conspiracy, unfair competitive practices and unfair competition. [Cr. Ex 2].

After finding Debtor, Bosserman and Automotive in contempt for failing to comply with its discovery order and failing to satisfy conditions to purge themselves of their contempt, the State Court imposed sanctions pursuant to Ohio Rule of Civil Procedure 37(B) that included striking the pleadings filed by Bosserman, Automotive and Debtor, granting SkyMark and First Federal default judgment, and ordering a final hearing to determine damages. [Cr. Ex. 7, p. 20]. On October 8, 2017, several weeks before that hearing was to take place, Debtor filed its Chapter 11 bankruptcy petition.

Bosserman testified that Debtor's bookkeeper, Gail Mitchell, has Debtor's full accounting records

2

and assisted in preparing its bankruptcy schedules and Statement of Financial Affairs. She had the applicable bankruptcy forms, spoke with Debtor's attorney and gathered the financial information. After the documents were prepared, Bosserman reviewed and authorized the filing of the documents. At the first meeting of creditors and at the hearing on SkyMark's Motion, Bosserman acknowledged that, as filed, the bankruptcy schedules and the Statement of Financial Affairs contain a number of inaccuracies.

Bosserman testified that between $600,000 and $800,000 must be added to the $1,689,518 disclosed as the total value of Debtor's assets due to the failure to include the current value of debtor's interest in certain assets included on Schedule A/B. Specifically, Debtor schedules "15 trucks to be sold 'as is, where is'" at a current value of zero, stating "DIP will supplement." [Cr. Ex. 3, Schedule A/B, ¶ 21]. Bosserman testified that the current value of these trucks is between $500,000 and $700,000. Debtor schedules "Parts inventory" at a net book value of $100,000 but indicates the current value is zero. [*Id.* at ¶ 22]. Bosserman testified that the current value of the parts inventory is $106,000. The response to paragraph 47 of Schedule A/B, asking if Debtor owns any vehicles, states "See Truck inventory attached hereto and incorporated by reference herein" and shows the current value of debtor's interest is zero. [*Id.* at ¶ 47.1]. Bosserman testified that the trucks referred to in paragraph 47 are the same trucks to be sold that are referred to in paragraph 21. There was no response to the inquiry regarding "other machinery, fixtures and equipment." [*Id.* at ¶ 50]. Bosserman testified that Debtor owns computer equipment and furniture valued at $28,195.58. He testified that, at the time he reviewed the bankruptcy schedules and Statement of Financial Affairs, Excel spreadsheets that contained the required information were attached to the schedules. Although the spreadsheets were not filed with the bankruptcy schedules, the court credits Bosserman's testimony that it was his understanding that they would be filed with the schedules.

Other inaccurate disclosures include failing to disclose on Schedule A/B Debtor's lease with Automotive. [*See* Cr. Ex. 3, ¶ 54]. The lease is, however, disclosed on Schedule G. [*Id*. at p. 16/27]. In addition, Schedule D states that no creditors have claims secured by Debtor's property. [*Id*. at p. 9/27]. However, Debtor owes Huntington Bank approximately $44,000 on a line of credit, which, pursuant to a broad-based Commercial Security Agreement signed by Bosserman on behalf of Debtor, is secured by essentially all of Debtor's personal property. [*See* Cr. Ex. 26]. Debtor is also a co-borrower on a $523,000 Huntington Bank Note that is signed by Bosserman on behalf of both Automotive and Debtor. [*See* Cr. Ex. 27, pp. 6-12/44]. That Note is secured by a mortgage on real property owned by Automotive, [*Id*. at 24-44/44], as well as by a Commercial Security Agreement encumbering essentially all of Debtor's personal

property that was signed by Bosserman on behalf of Debtor, [*Id.* at 13-23/44]. Debtor scheduled the line of credit debt on Schedule E/F rather than Schedule D and states as the basis for the claim, "Note and UCC filing." [Cr. Ex. 3, p. 12/27]. Debtor did not schedule the $523,000 debt, the monthly payments of which Bosserman testified are paid by Automotive from the lease payments received by it from Debtor.

Debtor's Statement of Financial Affairs contains additional inaccurate disclosures. Regarding payments or transfers to creditors within ninety days before filing this case, Debtor responded, "None." [*Id.* at 18/27]. Bosserman testified that creditors received payments totaling $912,000 during that time period. The court credits his testimony that he understood that the report showing such payments would be attached to the petition. Bosserman further testified that Debtor has never had difficulty paying trade creditors and always pays creditors in accordance with its terms of payment, which is supported by Debtor's monthly operating report for November 2017, showing monthly net income of $273,510.55 and the age of no post-petition payables greater than thirty days. [*See* Cr. Ex. 25, pp. 5, 10]. Bosserman testified that since filing, Debtor has experienced net profits of $672,000 and is at 100 percent production capacity.

Regarding payments, distributions, or withdrawals credited or given to insiders within one year before filing this case, the Statement of Financial Affairs discloses that Bosserman's father, Terry L. Bosserman, received compensation for consulting services in an amount that was "unknown at time of signing but will supplement" and that ProFlo Latam received an estimated $360,000 as "payment for trucks ordered." [Cr. Ex. 3, p. 24/27].[1] Bosserman testified that ProFlo Latam provides to Debtor engineering services and services relating to web development, graphic design, preparing manuals and developing computer applications. He testified that Debtor paid ProFlo Latam $10,000 per month, which was increased to $12,000 per month some time during 2017, for engineering services and that those monthly payments are included in the estimated $360,000 reported on the Statement of Financial Affairs.

Although Bosserman testified that he received no distributions from Debtor, the Statement of Financial Affairs also does not disclose the compensation of either Bosserman or his wife, Crystal Bosserman, who performs clerical work for Debtor. Bosserman testified that, during the year before filing, his compensation included Debtor's payment of certain of his personal expenses but that, since filing, his compensation no longer includes the personal expense payments. Bosserman testified that he has provided

---

[1] The Bankruptcy Code defines "insider." 11 U.S.C. § 101(31)(B); *see* 11 U.S.C. § 101(41)(definition of person). Although the ProFlo Latam payments are disclosed as insider payments, ProFlo Latam is not a director or officer of Debtor, a partnership in which Debtor is a general partner or a general partner of Debtor. There is no evidence that ProFlo Latam is in control of Debtor. Thus, it is not an insider of Debtor.

information to the United States Trustee, disclosing all payments to himself, his wife and his father, Terry L. Bosserman, during the year before filing.

After filing Debtor's bankruptcy petition, on October 30, 2017, Bosserman and Debtor commenced an adversary proceeding against SkyMark, its attorney, and the judge in the State Court Action, alleging violations of the automatic stay. *See* Adv. Case No. 17-3105. On January 23, 2018, Bosserman and Debtor voluntarily dismissed the adversary proceeding. [*Id.*, Doc. # 25].

On December 14, 2017, the court denied Debtor's Application to Employ Patricia Kovacs as attorney for Debtor based on the court's finding that she had a conflict of interest due to her representation of Bosserman and Automotive, as well as Debtor, in the State Court Action and her representation of Bosserman's father in his pending Chapter 13 bankruptcy case. [Doc. # 86]. The court granted Debtor's application to employ new counsel on January 3, 2018. [Doc. # 107]. Bosserman testified that since new counsel has been obtained, amended schedules are being prepared for filing. Attorney Kovacs continues to represent Bosserman in his individual capacity.

## **LAW AND ANALYSIS**

The appointment of a Chapter 11 trustee is governed by 11 U.S.C. § 1104(a), which provides as follows:

> At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee--
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

The appointment of a trustee is the exception rather than the rule in a Chapter 11 case, there existing a strong presumption that a debtor should remain in possession. *In re Nat'l Staffing Servs., LLC*, 338 B.R. 31, 33 (Bankr. N.D. Ohio 2005). As one court explained, this "is based upon the fact that 'very often the creditors will be benefitted by continuation of the debtor in possession, both because the expense of a trustee will not be required, and the debtor, who is familiar with his business, will be better able to operate it during the reorganization case." *In re PMH Corp.*, 116 B.R. 644, 645 (Bankr. N.D. Ind. 1989) (quoting H.R. No.

95-595, 95th Cong., 2d Sess., reprinted in 1978 U.S.C.C.A.N. 5963, 6192.). Thus, courts "have been reluctant to appoint a trustee until a debtor has had a reasonable opportunity to seek confirmation of a plan of reorganization and make a fresh start as Congress intended." *Id.* A movant must support a motion for the appointment of a Chapter 11 trustee with clear and convincing evidence. *Official Comm. of Asbestos Claimants v. G-I Holdings Inc. (In re G-I Holdings, Inc.)*, 385 F.3d 313, 317–18 (3d Cir. 2004); *In re Nat'l Staffing Servs., LLC*, 338 B.R. at 33; *In re Nartron Corp.*, 330 B.R. 573, 591 (Bankr. W.D. Mich. 2005). "For evidence to be 'clear and convincing' it must 'produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.'" *In re Nat'l Staffing Servs., LLC*, 338 B.R. at 33 (quoting *Cruzan ex rel. Cruzan v. Director, Missouri Dept. of Health*, 497 U.S. 261, 285 n. 11 (1990)).

In this case, SkyMark moves for appointment of a trustee for "cause" under § 1104(a)(1) and, alternatively, under § 1104(a)(2) as being in the best interests of creditors.

## I. "Cause" for the Appointment of a Trustee Has Not Been Shown

SkyMark argues that cause for the appointment of a trustee exists as shown by the State Court default judgment and the deemed admissions in State Court. Additional arguments are that Bosserman filed this case in bad faith, employed counsel with conflicts of interest, abused the bankruptcy process by commencing the adversary proceeding alleging violation of the automatic stay, failed to disclose proper financial information in Debtor's bankruptcy schedules and Statement of Financial Affairs, and is engaging in self-dealing transactions with ProFlo Latam. These arguments are also adopted by First Federal in its response to the Motion.

### A. State Court Default Judgment

SkyMark first argues that Bosserman, as Debtor's sole member and President, has engaged in fraud and gross mismanagement of Debtor both prior to and after the commencement of this bankruptcy case and that, as a result, the appointment of a Chapter 11 trustee is mandated under § 1104(a)(1). In support thereof, SkyMark relies on the State Court penalty default judgment entered against Bosserman, as well as Debtor and Automotive, on all claims asserted against them by SkyMark and First Federal. Those claims include, among other things, claims for fraud, unfair competition, misappropriation of collateral, and conversion of assets purchased by SkyMark at the receivership auction. SkyMark argues that because entry of the default judgment resulted in the admission of all factual averments in the State Court complaint, the facts alleged

therein are established by the deemed admissions.

Citing *Enquip, Inc. v. Smith-McDonald Corp.*, 655 F.2d 115 (7th Cir. 1981), at the hearing on its Motion, SkyMark argued that, although Debtor may introduce evidence to the contrary, the deemed admissions in State Court are admissible as evidence in this case. However, the court finds *Enquip, Inc.* distinguishable. In that case, the district court had granted summary judgment against a party based solely on that party's averments in his pleading in another case. *Id.* at 118-19. The appellate court held that a party's averment in his pleading in one case is admissible and cognizable as an admission in another proceeding where that party has "a full opportunity to explain the purported admission to demonstrate that there is an issue of material fact." *Id.* at 118. Unlike *Enquip, Inc.*, where the party's own averment was sought to be used as an admission against him, SkyMark seeks to use its own and First Federal's averments in their State Court complaints as admissions against Bosserman. Thus, the holding in *Enquip, Inc.* does not apply to the facts in this case.

Here, SkyMark is relying on deemed admissions resulting from the State Court's entry of a penalty default judgment, which is not a final judgment. The fact of deemed admissions for purposes of SkyMark and First Federal's claims in State Court as a penalty for the failure to comply with the State Court's discovery order shed no light on the facts this court must determine in deciding whether the appointment of a Chapter 11 trustee is required, namely, whether Debtor's management, and specifically Bosserman, has, in fact, acted fraudulently or dishonestly, or whether Bosserman is incompetent or has grossly mismanaged Debtor's affairs. This court cannot rely on the deemed admissions to find by clear and convincing evidence that Bosserman has actually acted in such a manner that requires the appointment of a trustee.

**B. Bad Faith Filing**

Next, SkyMark argues that cause exists to appoint a trustee because Debtor's bankruptcy case was filed as a litigation tactic and, thus, was filed in bad faith. SkyMark is correct in arguing that the statutory grounds listed for cause in § 1104(a)(1) are nonexclusive. *See In re Westgate Properties, Ltd.*, 432 B.R. 720, 722 (Bankr. N.D. Ohio 2010). Thus, "bad faith" conduct of a debtor's management may, under some circumstances, constitute cause for appointment of a trustee under § 1104(a)(1). However, the court does not find that filing a petition in bad faith is such a circumstance. There is no question that filing a bankruptcy petition in bad faith may constitute "cause" for dismissal or conversion of a case under § 1112(b), *see Trident Assocs. Ltd. P'ship v. Metropolitan Life Ins. Co. (In re Trident Assocs. Ltd. P'ship)*, 52 F.3d 127, 130 (6th Cir. 1995); *In re Fraternal Composite Serv., Inc.*, 315 B.R. 247 (N.D.N.Y. 2003)

7

(cited by Skymark), but "bad faith" in that context is not a basis under §1104(a)(1) for ousting current management of a debtor in an ongoing Chapter 11 case. *In re Daily*, Case No. 309-05337, 2009 WL 3415204, *3 (Bankr. M.D. Tenn., Oct.19, 2009)(whether Chapter 11 petition filed in response to an adverse state court judgment is a "bad faith" filing is appropriately considered in the context of a motion to dismiss, not a request for appointment of a trustee).

### C. Employment of Counsel

SkyMark also argues that cause to appoint a trustee exists because Attorney Kovacs now represents Bosserman in his individual capacity, notwithstanding her former representation of Debtor as a debtor-in-possession and her disqualification as Debtor's counsel. Kovacs' disqualification was based on the court's finding that she represented too many parties, namely, Debtor, Bosserman, Automotive and Bosserman's father, with their own legal interests that would impair her ability to provide untainted advice to Debtor with respect to its duties as Debtor-in-Possession. SkyMark argues that Kovacs possesses confidential information concerning Debtor and has engaged in privileged communications with Debtor's management. Citing Rule 1.9(a) of the Ohio Rules of Professional Conduct,[2] SkyMark then argues that, given the fiduciary duties owed by Debtor as Debtor-in-Possession, Debtor cannot consent to Kovacs' "adverse representation" of Bosserman in this case. In essence, SkyMark's argument is that cause exists for appointment of a trustee so that the trustee can preclude Kovacs' representation of Bosserman in this case. It also argues that Bosserman has acted in bad faith in retaining Kovacs to represent him personally since creditors will not know from whom he is seeking advice in carrying out his role as Debtor's management.

The court is not persuaded by SkyMark's arguments. Initially, the court notes that there is no evidence that Kovacs possesses any confidential information concerning Debtor that Bosserman, as Debtor's owner and President, does not also possess or that she engaged in any privileged communications to which Bosserman was not privy. Moreover, Debtor is now represented by counsel who is disinterested and able to advise regarding the fiduciary duties and best interests of Debtor as Debtor-in-Possession. There is no testimony or evidence that leads the court to believe that Bosserman is unable with disinterested counsel for Debtor to distinguish between decisions relating to the best interests of Debtor and his own best interests.

---

[2] Rule 1.9(a) of the Ohio Rules of Professional Conduct provides:
Unless the former client gives informed consent, confirmed in writing, a lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client.

8

The fact that he has stopped having Debtor pay his personal expenses is some indication of his ability to do so. As to legal issues that may arise in this case relating to Bosserman individually, other than alleged "self-dealing" transactions with ProFlo Latam, which, as discussed below, is not supported by sufficient evidence to warrant appointment of a trustee, SkyMark points to no other representation that is adverse to Debtor. Unless and until such adversity arises, appointment of a trustee is not required.

### D. Adversary Complaint

SkyMark argues that Debtor and Bosserman's filing of the adversary complaint in this case, alleging violations of the automatic stay without a legal or factual basis, is also cause for appointment of a trustee. The adversary proceeding, however, did not impact Bosserman's ability to administer Debtor's bankruptcy estate. To the extent it was based on a misconception of the law or brought for an improper purpose, such issues are appropriately dealt with in the procedural context of the adversary proceeding and under Rule 9011 of the Federal Rules of Bankruptcy Procedure. In any event, Debtor and Bosserman have now voluntarily dismissed it.

### E. Financial Disclosure Issues

SkyMark also relies on the deficiencies in Debtor's bankruptcy schedules and Statement of Financial Affairs and Debtor objecting to SkyMark's motion for a Rule 2004 exam as a basis for finding cause to appoint a trustee. Regarding Debtor's objection, the court can not find objecting to the motion for Rule 2004 exam indicative of Bosserman acting in bad faith, as argued by SkyMark. No hearing has yet been held and the court has not yet ruled on that motion as it has been held in abeyance pending other proceedings in this case, including the court ruling on SkyMark's motion to appoint a trustee.

Regarding deficiencies in Debtor's schedules, the court does not believe that information omitted from the schedules that were filed was omitted by Bosserman with the intent to mislead creditors or to provide an inaccurate financial picture. As discussed earlier, the court credits Bosserman's testimony that when he reviewed and signed Debtor's bankruptcy schedules, he had Excel spreadsheets that set forth information omitted in the schedules themselves and understood that those spreadsheets would be filed with the schedules as an attachment. And while Huntington's secured claims were not included on Schedule D, it was not omitted as a creditor. The secured nature of the Huntington line of credit is disclosed on Schedule E/F. Within five days of commencement of the case, on October 13, 2018, and well before it filed its schedules, Debtor filed a motion seeking authority to use Huntington's secured interest in cash collateral. [Doc. # 7]. The omission of Huntington from Schedule D is careless, but not indicative of an intention to

9

17-33184-maw    Doc 125    FILED 01/29/18    ENTERED 01/29/18 14:53:22    Page 9 of 12

conceal financial information. Similarly, although the fact that Debtor leases property from Automotive is not included on Schedule A/B, there is no indication that Bosserman intended to conceal information regarding the lease, as it is included as an unexpired lease on Schedule G.

Other deficiencies include the failure to disclose payments made to creditors during the ninety days before Debtor's petition was filed and incomplete disclosure of payments to insiders. The court does not believe that these deficiencies were made with the intent to mislead creditors. Bosserman had reviewed a report setting forth the payments to creditors that he understood was to be filed as an attachment to the Statement of Financial Affairs. Insider payments are disclosed as having been made to Bosserman's father and ProFlo Latam, which is not an insider.[3] While payments received by Bosserman and his wife are not disclosed, the court does not believe that Bosserman intended to hide the fact that they had received payments from Debtor, as he and his wife were both employed by Debtor. With the assistance of new counsel for Debtor, Bosserman testified credibly that he has a better understanding regarding the disclosures that are required and is in the process of overseeing amendment of Debtor's schedules and Statement of Financial Affairs.

### F. ProFlo Latam Transactions

SkyMark finally argues that cause to appoint a trustee exists due to what it characterizes as Debtor's ongoing self-dealing transactions with ProFlo Latam. According to SkyMark, Bosserman is shifting business and thus, the related profits, from Debtor to ProFlo Latam. While there is evidence of transactions with ProFlo Latam, Bosserman testified that their purpose and effect is cost-savings for Debtor. The record before the court is insufficient to find an untoward purpose relating to those transactions.

For all of the foregoing reasons, whether its arguments are taken individually or collectively, SkyMark has not met its high burden under § 1104(a)(1).

## II. Appointment of a Trustee Is Not in the Best Interests of the Parties

Where cause mandating appointment of a trustee under § 1104(a)(1) has not been shown, the court may exercise its discretion and appoint a Chapter 11 trustee under § 1104(a)(2) if doing so would serve the best interests of the parties and the estate. This subsection creates a flexible standard that permits the court to exercise its equitable powers to engage in a cost-benefit analysis in order to determine whether it is in the best interests of creditors, equity security holders, and other interests of the estate to leave the debtor in possession or appoint a Chapter 11 trustee. *In re Nat'l Staffing Servs., LLC*, 338 B.R. 31, 33-34 (Bankr.

---

[3] *See* note 1.

N.D. Ohio 2005).

In essence, SkyMark presents all of the arguments discussed earlier in this opinion as reasons for the court to exercise its discretion to appoint a trustee. It then argues that a trustee should be appointed to investigate transfers to ProFlo Latam and to insiders and, where appropriate, to recover assets for the benefit of creditors. Similarly, First Federal argues that a trustee should be appointed to review inter-company transfers that have occurred between "related parties (insiders)[4] within one year from the date the Chapter 11 was filed" and post-petition "questionable financial transactions that include expenses devoted to travel and meals." [Doc. # 112].

The court finds it significant that Huntington Bank, Debtor's only secured creditor, opposes appointment of a trustee, arguing that the appointment would burden the estate and cost Huntington Bank a reduction in its cash collateral. It is also significant that Huntington Bank and SkyMark both have approved the cash collateral orders and budgets attached thereto that have been entered in this case, including budgeted expenses for travel and meals. [*See, e.g.,* Doc. ## 39, 64, 104]. There is no evidence that Bosserman is not effectively managing Debtor at this time. Since filing, Debtor has experienced net profits of $672,000.

To the extent SkyMark and First Federal's arguments are based on the inaccurate disclosures in Debtor's bankruptcy schedules and Statement of Financial Affairs, for the reasons already discussed, the court finds that SkyMark has not demonstrated that the appointment of a trustee is warranted. While the court has some concerns regarding transactions with ProFlo Latam, given Bosserman's seventy-five percent interest in that entity, and insider payments to Bosserman, his wife and his father, and potential causes of action relating to those transactions, there is no evidence at this time that those transactions were fraudulent or otherwise avoidable transfers. The court believes, at this juncture, that the harm of imposing an additional layer of substantial costs upon Debtor by appointing a trustee to run the business is not warranted.

On the record before it, for all of the reasons discussed above, the court does not find that the appointment of a trustee would be in the best interests of all creditors, equity security holders and the estate.

## III. Appointment of an Examiner

Notwithstanding the decision not to appoint a trustee, the court may nevertheless appoint an

---

[4] Presumably, First Federal's reference to inter-company transfers refers to transfers between Debtor and ProFlo Latam and Automotive, neither of which are insiders as characterized by First Federal, as neither are a director, officer, person in control of Debtor, a partnership in which Debtor is a general partner or a general partner of Debtor. *See* 11 U.S.C. § 101(31)(B).

11

examiner under § 1104(c) to address concerns that there may exist potential claims relating to the ProFlo Latam transactions and insider payments. Section 1104(c) provides as follows:

> If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if--
>
> > (1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate. . . .

11 U.S.C. § 1104(c).

The appointment of an examiner under § 1104(c)(1) is a matter of discretion. In exercising its discretion, the court "must determine whether the creditors and equity security holders would be served by the appointment of an examiner and whether the costs of an examiner are not disproportionately high." *In re Gilman Servs., Inc.*, 46 B.R. 322, 327 (Bankr. Mass. 1985). Known to be at issue is approximately $360,000 transferred prepetition to ProFlo Latam, as well as insider payments in currently undisclosed amounts. The court believes that the interests of all creditors would be best served by appointment of an examiner for the limited purpose of investigating these transactions and whether there exists claims relating to them. Unlike the substantial cost to Debtor of appointing a trustee, the cost of an examiner for this limited purpose is not disproportionately high compared to the potential benefit, particularly in the absence of an unsecured creditors' committee from this case. Pursuant to § 1104(c)(1) and § 105(a), the court will therefore order the United States Trustee to select an individual to be appointed an examiner in this case for that limited purpose.

### **CONCLUSION**

For all of the foregoing reasons, the court will deny SkyMark's motion to appoint a Chapter 11 trustee [Doc. # 85] but, pursuant to § 1104(c)(1) and § 105(a), will order the United States Trustee to select an individual to be appointed an examiner for the limited purpose of investigating the transactions between Debtor and ProFlo Latam and payments to Terry N. Bosserman, Crystal Bosserman and Terry L. Bosserman as insiders of Debtor and reporting the results of that investigation.

The court will enter a separate order in accordance with this Memorandum of Decision.

###

12

17-33184-maw    Doc 125    FILED 01/29/18    ENTERED 01/29/18 14:53:22    Page 12 of 12